Michael McGUIRE, Appellant,

v.

Christy Joyce BROWN, Appellee.

No. 12877.

Court of Civil Appeals of Texas, Austin.

April 4, 1979.

Rehearing Denied May 2, 1979.

Larry J. Dowling, Austin, for appellant.

Gene Y. Stratton, Bertram, Clayton E. Evans, Burnet, for appellee.

SHANNON, Justice.

This appeal concerns the termination of a parent-child relationship pursuant to Tex. Family Code Ann. § 15.02 (Supp.1978).

Appellee Christy Joyce Brown filed suit in the district court of Burnet County seeking termination of the parent-child relationship between her former husband, appellant Michael McGuire, and their only child, Erin McGuire. After trial to a jury, the district court entered judgment terminating the parent-child relationship.

Appellee and appellant were divorced January 14, 1976, by order of the district court of Burnet County. Erin McGuire was born May 22, 1973. According to the parties, the divorce judgment named appellee and appellant joint managing conservators and ordered neither to pay child support. Appellee married her present husband on March 23, 1976.

In her trial pleading, appellee asserted as grounds for termination that: (1) appellant had failed to support the child for a period in excess of one year ending within six months of the filing of suit; and (2) appellant had engaged in conduct which endangered the physical and emotional well-being of the child. Appellee also pleaded that termination of the parent-child relationship between appellant and the child was in the best interest of the child.

The court's charge contained three special issues. The jury answered: (1) that appellant failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition; (2) that appel-

lant had engaged in conduct which endangered the physical or emotional well-being of the child; and (3) that termination of the parent-child relationship between appellant and the child was in the best interest of the child. The district court entered judgment in accordance with the jury verdict.

Appellant complains of the judgment by seven points of error. Points one and two are that there is no evidence, or insufficient evidence, to support the jury's answer that appellant failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of suit. Point three is that there is no evidence that termination of the parent-child relationship was in the best interest of the child.

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (1914). In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960).

Texas Family Code Ann. § 15.02 (Supp. 1978) empowers the court to grant a petition requesting termination of the parent-child relationship of a non-requesting parent when:

"(1) the parent has:

(E) engaged in conduct . . . which endangers the physical or emotional well-being of the child; or

(F) failed to support the child in accordance with his ability during a period of one year ending within six

months of the date of the filing of the petition;

.    .    .    .    .

(K) . . . and in addition, the court further finds that

(2) termination is in the best interest of the child."

The evidence with respect to failure to support, § 15.02(1)(F), is that appellant is thirty years old, healthy, and able to work. After entry of the divorce judgment, appellant went to Chicago and worked in commercial photography darkrooms. He also attended photography classes at an art institute located in Chicago. After several months in Chicago, appellant returned to Austin. In Austin he has worked in a photography laboratory and as a carpenter. The owner of the Austin photography lab testified that appellant was paid $2.50 an hour and worked about thirty-five hours a week. Appellant earned about $800.00 monthly as a carpenter. Appellant has not remarried, and has no unusual expenses.

On direct examination, counsel asked appellant whether he sent ". . . any money at all to [appellee] during that year [the year ending within six months of the filing of suit]?" Appellant responded, "Yes I am sure I did." Appellant admitted, however, that the sum sent was ". . . not very much." Appellee testified that although she had requested appellant many times to help support the child, he had never done so, other than to make one $20.00 payment for the entire year. On the last occasion appellee asked appellant for support for the child, appellant not only refused her but also cursed her so violently in the presence of the child that appellee's father threw appellant out of the house.

To support the child, appellee worked as a sales clerk in her mother's shop in Horseshoe Bay. She also worked as a ranch hand on her father's ranch, planting and gathering hay, fixing fences, and helping with the cattle. Appellee also borrowed money from her parents to buy necessaries for the child.

Appellant claimed that, had he been ordered by the court to make child support payments, he would have done so. Appellant stated on cross-examination that the reason that he did not pay support for his child was "[b]ecause I wanted to support him in my home and I wasn't allowed to." The parties had planned prior to the entry of the divorce judgment that appellee would support Erin in her home and appellant would support the child in his home, but that plan had not worked out. Appellee had denied appellant access to the child on several occasions.

In *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976), David Adams filed suit to terminate the parent-child relationship between his former wife, Nanci Adams Holley, and their son. By the terms of the divorce decree, Adams had been named managing conservator of the child and Mrs. Holley had not been required to pay child support. One ground asserted by Adams as basis for termination was that Mrs. Holley had failed to support her child in accordance with her ability during a period of one year ending within six months of the filing of the suit for termination. Between 1970 and 1975, Mrs. Holley sent a total of $100.00 for the support of her son; she purchased and paid premiums for a health insurance policy covering her son; and she sent an assortment of gifts and toys to her son. From 1970 to 1972, Mrs. Holley was a housewife without outside employment. She obtained employment in 1972, earning a gross income of $500.00 monthly. Mrs. Holley declared voluntary bankruptcy in 1973. Mr. Holley received $300.00 monthly in education benefits and worked part-time. Under these facts the Supreme Court held that Mrs. Holley failed to support her child in accordance with her ability. The facts in the case at bar are much stronger in support of the jury's finding of failure to support the child in accordance with appellant's ability than were the facts in *Holley.*

Rejecting all evidence contrary to the jury's finding and considering only the facts and circumstances that tend to support that finding, *Renfro Drug Co. v. Lewis, supra,* we are of the opinion that the jury's finding that appellant failed to support the child in

accordance with his ability was supported by some evidence. We are of the further view that the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate, supra.*

Point of error three is that there is no evidence to support the jury's answer that termination of the parent-child relationship is in the best interest of the child. Appellant *does not* attack this answer of the jury upon the basis of insufficient evidence.

■ As we understand *Holley v. Adams, supra,* the fact finder may consider a number of factors in determining whether termination is in the best interest of the child. Among other things, the fact finder may consider: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

The child's maternal grandmother, Gloria Maclachlan testified that when appellant came to pick up the child for visitation, the child would pull back and declare that he did not want to go with appellant. Appellee's evidence was that the child was always upset and crying when she picked him up after visitation with appellant. When appellant screamed and cursed appellee in response to her request for support, the child was present and was "upset" by appellant's conduct.

Mrs. Maclachlan testified that on occasion she had witnessed appellant "under the influence" of drugs in the presence of the child. On one of these occasions Mrs. Maclachlan felt compelled to take the child from appellant's possession because appellant was ". . . very incoherent, and not in good enough shape to take care of this boy." On more than one occasion, appellant asked Mr. Maclachlan, in the presence of the child ". . . to take dope with him, smoke marijuana." Appellant testified on direct examination that he has stopped smoking marijuana.

Appellee testified to situations that reflected adversely upon appellant's parental ability. For example, appellant once proposed that he and a female companion, known only as "The Phantom," take Erin, then two and one-half years old, on a hitch-hiking jaunt to Mexico. Another time, appellee went to pick up the child from a visitation with appellant. Appellant and the child were visiting friends at a ranch in Burnet County. When appellee arrived, there was a party in progress at which some fifty persons were in attendance. Appellee observed at that gathering "[a] lot of drug use and a lot of drinking." Appellee discovered Erin naked and very filthy. She found appellant in a tepee and in response to her inquiry as to the whereabouts of the child's clothing, appellant's response was "Here, there, everywhere."

The evidence was that appellee and her husband provide Erin with a healthy, wholesome, and somewhat structured home life. Appellee and her husband seem to emphasize in their home the values of work, discipline, and motivation.

Appellant testified that he came from a creative background. Appellant expressed concern that Erin, in appellee's home, would develop materialistic points of view. Appellant was concerned also that Erin would not receive what appellant considered to be a proper education in appellee's home and in the Marble Falls schools. It could be inferred that appellant's view was that Erin should be allowed to develop educationally and socially with little or no constraint. Henry Alexander Nolan, a child welfare worker who investigated the case, testified that appellant's view of rearing Erin was ". . . exactly conflicting with the viewpoint of [appellee and her husband]." Nolan testified that with the parties

". . . having two such forceful viewpoints, both of them in a hundred and eighty degrees of each other and the child caught in the middle, it's going to possibly damage the child's upbringing as far as getting stability in one place and being taught just the opposite in the other place."

Appellant's failure to support his child in accordance with his ability is one of the factors which the jury could consider in ascertaining the best interest of the child. *Holley v. Adams, supra.* The jury could consider also, in ascertaining the best interest of the child, appellant's excuses offered for failure to pay support: (1) that he was not ordered by the court to pay support; (2) that he wanted to support the child in his own home; and (3) that he was denied, on occasion, access to the child. See *Holley v. Adams, supra.*

Considering only the evidence most favorable to the jury's finding and disregarding entirely what is opposed to it or is contradictory, *Renfro Drug Co. v. Lewis, supra,* we have concluded that the jury's answer that termination of the parent-child relationship was in the best interest of the child is supported by some evidence. In reaching this conclusion, this Court, of course, does not pass judgment upon the credo of life expressed by either appellee or appellant. Instead, this Court simply holds that appellee has discharged her burden of producing some evidence in support of her contention that termination of appellant's parental rights was in the best interest of the child. Under the evidence the jury could have concluded that the child dreaded visitations with appellant and returned from those visits emotionally upset; that appellant by use of drugs permitted himself to become unable to adequately care for the child during visitation; that appellant's parental ability, judged by past conduct, was questionable; that appellee and her husband offered a stable home environment; and that appellant's nonstructured view of learning and daily conduct, although perhaps appropriate enough for some adults, was not suitable for a small child. The jury could have considered appellant's refusal to support the child in accordance with his financial ability, particularly in view of ap-

pellee's repeated requests for financial help. Although appellant testified that he loved Erin "[m]ore than anything in the world," the jury could have believed that appellant evidenced but faint devotion when he repeatedly refused to help feed and clothe the child. The jury could have believed that appellee was justified in occasionally refusing to permit appellant to take Erin to his home in view of appellant's past unsatisfactory conduct in caring for Erin during visitation. The jury, of course, was not required to believe appellant's statement that he would have paid support payments if the court had ordered him to do so.

In *Holley v. Adams, supra,* Mrs. Holley failed to support her child in accordance with her financial ability. The Supreme Court in that case regarded the facts that Mrs. Holley was never ordered to pay child support and that her former husband never sought or wanted any support for the child from Mrs. Holley as establishing an excuse for nonpayment. In the case at bar and contrary to the facts in *Holley,* appellee was reduced to a hard-scrabble existence as a ranch hand and sales clerk to furnish necessaries for the child. Appellee, time after time, entreated appellant to help support Erin. Not only did appellant refuse to accede to those requests, he finally rebuffed appellee with angry oaths. Point of error three is overruled.

By points of error four and five, appellant claims that the district court erred in refusing to include in the court's charge two requested special issues submitting "excuse" for failure to support the child in accordance with his ability. Appellant argues that affirmative answers to the "excuse" issues would bar entry of judgment of termination.

The Supreme Court in *Holley v. Adams, supra,* held that any "excuse" for the acts or omissions of the parents, § 15.-02(1)(A)–(K), can be considered by the fact finder only as one of the several factors in determining the best interest of the child. Although *Holley v. Adams* involved a court-tried case, we are of the view that the court's reasoning in *Holley* requires that "excuse" in a jury case be submitted not by

special issue, but instead by way of definition or instruction to the jury that "excuse" is one of the factors to be considered in determining the best interest of the child. Appellant, of course, did not request the submission of a substantially correct definition or explanatory instruction concerning excuse, and any error of the court in failing to instruct the jury with respect to "excuse" was waived. Tex.R.Civ.P. 279.[1]

Appellant's seventh point of error complains that the district court erred in refusing to charge the jury that, "[y]ou are instructed that in determining whether or not the best interest of the child will be served by termination of the parental rights of [appellant]. That there is a presumption in favor of the continuation of those rights [sic]."

The presumption to which appellant most probably refers in his requested instruction is discussed in such opinions as *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976), and *Matter of R___ E___ W___*, 545 S.W.2d 573 (Tex.Civ.App.1976, writ ref'd n. r. e.). In *Spratlan* the Supreme Court wrote, "[a]ctions which break the ties between a parent and child 'can never be justified without the most solid and substantial reasons.' . . . Particularly in an action which permanently sunders those ties, should the proceedings be strictly scrutinized. This court has always recognized the strong presumption that the best interest of a minor is usually served by keeping custody in the natural parents. . . ." Neither *Spratlan* nor *R___ E___ W___* involved claimed error by the trial court in failing to instruct the jury concerning a legal presumption that the best interest of the child is served by a continuation of the parent-child relationship.

The sole effect of a presumption is to fix the burden of producing evidence.

Presumptions are nothing more than rules for the guidance of trial judges in locating the burden of producing evidence at a particular time. 1 McCormick & Ray, *Texas Law of Evidence* § 57 (2nd ed. 1956). The trial court has to determine whether the opponent has produced sufficient evidence to support a finding of the nonexistence of the presumed fact; if so, the case will proceed as if no presumption exists. If such evidence is not produced, the jury will be directed either absolutely or conditionally to find the presumed fact. In the situation where the party against whom the presumption operates has the burden of persuasion (as well as the burden of producing evidence), the presumption will have no effect. No instruction to the jury was required. 1 McCormick & Ray, *Texas Law of Evidence, supra.* The point of error is overruled.

The judgment is affirmed.

Affirmed.

---

1. Special issue No. 3 provided: "Do you find from a preponderance of the evidence that termination of the parent-child relationship between the [appellant], and the child, Erin McGuire, is in the best interest of the child, Erin McGuire?" The "best interest of the child" was not defined in the charge. Appellant did not request a substantially correct definition of the "best interest of the child," and appellant has no point of error attacking the judgment for the court's failure to define the term. Any error by the court in failing to define the term, of course, has been waived. Tex.R.Civ.P. 279. Appellant did request one instruction with respect to the "best interest of the child." The court's refusal to include the requested instruction is the foundation for point of error seven.