In the Interest of R.M., A Child.

No. 06–05–00053–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 30, 2005.

Decided Dec. 6, 2005.

Ernest Lee McCarty, Paris, pro se.

Charles W. Butler, Bonham, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Ernest McCarty appeals from the termination of his parental rights to R.M., a child now seven years old. McCarty contends the trial court erred in terminating his parental rights because the evidence was legally insufficient to justify termination and erred in finding that termination was in the best interest of the child. We overrule these contentions and affirm the judgment.

### Factual Background

R.M.'s great-aunt and uncle, Donna and Mike Mosley, filed the underlying petition to terminate McCarty's parental rights and to adopt R.M. R.M. was taken to the Mosleys by a relative when the child was six to eight weeks old. She has lived in their home continuously since that time. They have been the sole providers for her care and daily needs. The Mosleys obtained joint conservatorship of R.M. when she was two years old.

McCarty saw R.M. once or twice a month when she was an infant and has seen her during more than one Christmas holiday season. However, he has seen her only sporadically in the last few years. McCarty never sent any money or other support to the Mosleys, and they did not expect any. However, McCarty testified he has given clothes and gifts to R.M.

### Standard of Review

The standard of review in parental rights' termination proceedings is clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2005); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002). The

evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established by the state. *In re C.H.,* 89 S.W.3d 17, 25–26 (Tex.2002).

■ In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.F.C.,* 96 S.W.3d at 266; *C.H.,* 89 S.W.3d at 25. Looking at the evidence in the light most favorable to the judgment means we must assume the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *J.F.C.,* 96 S.W.3d at 266.

■ The fundamental interest in parental rights' termination cases is to protect the best interest of the child. TEX. FAM.CODE ANN. § 153.002 (Vernon 2002); *In re B.L.D.,* 113 S.W.3d 340, 353–54 (Tex. 2003). A court may order involuntary termination only if the court finds that: (1) a parent has committed a predicate act or omission harmful to the child, and (2) termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001; *B.L.D.,* 113 S.W.3d at 353–54. This interest is aligned with another of the child's interests—an interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged. *In re M.S.,* 115 S.W.3d 534, 547–49 (Tex. 2003); *In re R.I.S.,* 120 S.W.3d 502, 503 (Tex.App.-Texarkana 2003, no pet.).

The Family Code provides several situations in which parental rights may be involuntarily terminated. *See* TEX. FAM.CODE ANN. § 161.001. Reviewing the trial court's findings of fact and conclusions of law, it appears the trial court could have ordered termination based on one of four situations.

### Section 161.001(1)(A)

■ This section allows involuntary termination where the parent has voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return. TEX. FAM.CODE ANN. § 161.001(1)(A). The record does not support termination under this provision.

Undisputed evidence was presented at trial McCarty had visited R.M. and had called on at least one occasion to inquire about R.M. Further, no evidence was presented McCarty made an affirmative expression of his intent not to return.

### Section 161.001(1)(B) & (C)

■ Section 161.001(1)(B) allows involuntary termination where the parent has voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months. Section 161.001(1)(C) allows involuntary termination where the parent has voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months. A common element in each provision is that the parent must have failed to provide adequate support of the child. We hold that termination cannot be supported under either of these provisions because the evidence is legally insufficient to prove McCarty failed to provide adequate support.

The Texas Supreme Court has held that a parent is only required to make arrangements for adequate support of the child, not personally send support. *Holick v. Smith,* 685 S.W.2d 18, 21 (Tex.1985). Hol-

ick, unable to properly care for her child, took the child to the Smiths. Over the next six months, she never visited and called only once. She did not send any form of support to the Smiths and was not expected to do so. *Id.* at 19. The court held that termination was not authorized because Holick was only required to make arrangements for the support of her child rather than personally support the child.

McCarty did not personally deliver R.M. to the Mosleys. It also appears he did not initiate the arrangement whereby the Mosleys would care for R.M. However, McCarty has been aware of the arrangement at all times and agreed to the arrangement. He testified he liked the Mosleys and appreciated what they had done for his child. In 2000, McCarty agreed to allow the Mosleys to become joint managing conservators of R.M.

It should not be significant whether a parent physically delivers their child to someone who will care for the child. Rather, the controlling issue should be whether the parent was aware of, consented to, and participated in the arrangement for the child's support. At all relevant times, McCarty has consented to the Mosleys' care of R.M. By agreeing to the joint conservatorship, he allowed the Mosleys to better provide for R.M. The evidence is undisputed that the Mosleys have done an excellent job of providing for R.M.

Considering the facts of this case, we hold that the evidence is insufficient to find that McCarty did not arrange for the adequate support of R.M. Applying the holding in *Holick,* this means the evidence is necessarily insufficient to find that McCar-

ty had not provided for the adequate support of R.M. Accordingly, termination cannot be supported under either Section 161.001(1)(B) or (C).

### Section 161.001(1)(F)

■ Section 161.001(1)(F) allows involuntary termination where the parent has failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition. Considering only the evidence supporting the finding, there was legally sufficient evidence to support a finding under Section 161.001(1)(F).

■ That section requires a showing: (1) that McCarty failed to support the child in accordance with his ability[1] and (2) that his failure to support occurred during a period of one year ending within six months of the date of the filing of the petition. Tex. Fam.Code Ann. § 161.001(1)(F). One year means twelve consecutive months, and the ability to pay support must exist each month during the twelve-month period. *In re Z.W.C.,* 856 S.W.2d 281, 283 (Tex.App.-Fort Worth 1993, no writ); *Craddock v. Worley,* 601 S.W.2d 445, 446 (Tex.Civ.App.-Dallas 1980, no writ); *Brokenleg v. Butts,* 559 S.W.2d 853, 856 (Tex.Civ.App.-El Paso 1977, writ ref'd n.r.e.). The Mosleys filed their original petition December 6, 2004, so we must consider any consecutive one-year period that would have begun between June 6, 2003 and December 6, 2003.

The record shows that, before November 10, 2004, McCarty worked at Kimberly Clark making $8.00 an hour. McCarty testified he had worked at various other

---

1. The "in accordance with the parent's ability" language in subsection (F) is not found in subsections (B) or (C), the latter two of which require "providing adequate support." Therefore, the court's interpretation of subsection (C) in *Holick,* 685 S.W.2d 18, which held that merely making arrangements for the child's support is all that is required to meet the "providing adequate support" requirement, is not controlling in a subsection (F) analysis.

jobs, including work as a truck driver for a concrete company. McCarty also testified that he paid child support for two other children totaling $400.00 per month and that he was current on those payments.

McCarty's testimony that he had worked in the twelve months before November 10, 2004, and his ability to keep current with his other child support obligations show he had a source of income during the eighteen-month period in question. This evidence, when combined with the fact McCarty never sent any money or other support to the Mosleys, is legally sufficient proof McCarty failed to provide for R.M. according to his ability. Accordingly, we hold termination was proper under Section 161.001(1)(F).

In what amounts to a separate attack on the sufficiency of the evidence, McCarty contends the trial court's ruling was founded on a racial and cultural bias. There is no evidence in the record to support this contention. As discussed above, legally sufficient evidence exists to support the trial court's decision. Accordingly, we find this complaint is without merit.

**Best Interest of the Child**

 This portion of our review proceeds from the policy-based presumption that the best interest of a child is usually served by preserving the parent-child relationship. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *see Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976). In determining the child's best interest, the fact-finder may consider the current and future physical and emotional needs of the child, the current and future physical and emotional danger the child may confront with his or her parent, and the parental abilities of the individual seeking custody. The case of *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976), sets out the following list of nonexclusive factors to consider when determining the best interest of a child: (1)

the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

(1) *The desires of the child.*

Although R.M. did not testify at trial, the social study report prepared for the trial court states that R.M. wants to be adopted by the Mosleys.

(2) *The emotional and physical needs of the child now and in the future.*

There is no evidence in the record concerning this factor.

(3) *The emotional and physical danger to the child now and in the future.*

R.M. has lived with the Mosleys for all but two months of her life. Certainly, an emotional strain would be caused if the managing conservatorship was changed to McCarty and the child was required to leave the home she has known for more than seven years.

(4) *The parental abilities of the individuals seeking custody.*

There is extensive evidence in the record the Mosleys are good parents. They successfully raised two of their own children, now adults. McCarty agrees the Mosleys have done an excellent job of raising R.M. There is little evidence in the record as to McCarty's parental abilities. He also has two other children.

(5) *The programs available to assist these individuals to promote the best interest of the child.*

There is no evidence in the record concerning this factor.

(6) *The plans for the child by these individuals or by the agency seeking custody.*

The Mosleys testified to their desire and ability to continue raising R.M. as they have done for the past seven years. At trial, McCarty testified he had no dispute with the Mosleys' continued custody of R.M.

(7) *The stability of the home or proposed placement.*

R.M. has lived with the Mosleys virtually all of her life. The record shows the Mosleys had their home built to meet their needs while raising R.M. The social study prepared for the trial court found the Mosleys had created a loving and safe environment for R.M. The record shows that McCarty was incarcerated at the time of trial and has been incarcerated previously. McCarty testified at trial that, when he was released from jail, his girlfriend had a stable home which R.M. could visit.

(8) *The acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one.*

This factor has been fully discussed above, including McCarty's infrequent visits with R.M. and his failure to support her according to his ability.

(9) *Any excuse for the acts or omissions of the parent.*

McCarty's visits with R.M. were always arranged through her mother. Apparently, McCarty had a hard time finding R.M.'s mother as she moved frequently from place to place. This made it difficult for him to visit with R.M. on a regular basis. The only explanation McCarty offers for not sending support to the Mosleys for the care of R.M. is that they never asked him to do so.

## Conclusion

It is undisputed McCarty never provided any funds for the support of R.M. It is also undisputed he had some source of income with which to do so. Further, the evidence clearly shows that his failure to provide for R.M. according to his ability occurred over a period of more than a year ending within six months of the date of the filing of the petition.

Under these facts, we determine that there is clear and convincing evidence to support the termination, and we also conclude that termination was in the child's best interest.

We affirm the judgment.