# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00605-CV

**R. M., Appellant**

**v.**

**D. R. and B. R., Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. C2016-1621B, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant R.M. appeals the district court's final order terminating his parental rights to his child L.M.M. in the underlying suit filed by private parties.[1]  *See* Tex. Fam. Code §§ 101.032(a) (providing that suit to terminate parental rights is suit affecting parent-child relationship), 102.003(a)(9) (authorizing suit affecting parent-child relationship to be filed by person, other than foster parent, who has had actual care, control, and possession of child for at least six months).  The court found that Appellant "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months."  *See id*. § 161.001(b)(1)(C).  The court also found that termination

---

[1]  We refer to the parties by their roles in this appeal.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b).

of Appellant's parental rights was in the child's best interest.[2]  *See id.* § 161.001(b)(2).  In three issues, Appellant challenges the factual and legal sufficiency of the evidence supporting the court's findings.  We will affirm the court's final order.

## BACKGROUND[3]

Appellant and his wife are the biological parents of the child, who was born May 29, 2013, and was four years old at the time of trial.  Appellant and his wife are married but separated.  She is not a party to this appeal, and the record reflects that she executed two separate affidavits for voluntary relinquishment of parental rights as to the child, the first dated February 19, 2016, and the second dated March 2, 2017.  *See id*. § 161.001(b)(1)(K).  Appellant testified that he is the biological father of three other children and the father "by marriage" of a fourth child, all of whom have been involved in a Child Protective Services case since 2015 but are not part of the underlying private termination suit.  Appellant does not have custody of those four children, who live with their maternal grandmother.  The child is not part of the CPS case involving her siblings.

Until she was about two years old, the child lived with Appellant in Houston while her mother was incarcerated.  After her mother's release, the family moved in with the child's

---

[2]  The court's order also terminated the parental rights of the child's mother B.B., who signed an affidavit for voluntary relinquishment of her parental rights to the child.  *See* Tex. Fam. Code § 161.001(b)(1)(K) (authorizing termination of parental rights based on that parent's affidavit of relinquishment), .103 (addressing affidavits of voluntary relinquishment of parental rights).  At the time of trial, the child's mother was in jail.

[3]  The facts are summarized from the testimony and exhibits admitted into evidence at trial.

maternal grandmother at her home in New Braunfels. In early 2015, Appellant returned to Houston for work but his wife and the children remained in New Braunfels with the children's grandmother.

In April 2015, the child's mother gave the child to the appellees B.R. and D.R., a married couple who live in New Braunfels and have had physical custody of the child on and off for about two and a half years. D.R. has known the child's mother since childhood, and the child's mother is related to D.R.'s husband's family. D.R. testified that to her knowledge, Appellant did not see the child from April 2015 until July 2016, and D.R. did not receive any support for the child from him.

Appellant testified that he thought his wife was just allowing the child to visit and spend the night with Appellees. He testified that he would visit his children on the weekends, and "[his wife] would go back to [D.R.] and pick [the child] up and bring her home to the house to make it look like nothing was going on." However, D.R. testified that in December 2015 she went to pick up the child from her grandmother's house and that Appellant did not stop D.R. or say "don't take her" when he saw D.R. leaving with the child. Additionally, Appellant acknowledged that in June 2016, he saw the child being dropped off at her own sister's birthday party by D.R.

D.R. testified that Appellant told her in December 2015 that "he wanted compensation for one year and a half and that he would wash his hands and sign over her rights." Her understanding of this conversation was that Appellant was offering to sell the child. D.R. testified that she "wasn't about to pay money for her," that she knew that was illegal, and that she told her lawyer. Appellant challenged D.R.'s testimony about the request for compensation, noting that D.R. was unable to specify what "dollar amount" of money he had requested.

3

Appellant testified that in July 2016 his wife "finally broke down to me and explained to me what she had done," and he then told D.R. that the child was coming back to live with him and her mother. For about one month, the child lived with Appellant, her mother, and the four other children at her grandmother's house. Appellant testified that he was called back to work in August 2016, and he left for Sweeny, Texas with the rest of the family remaining at the grandmother's house. He also testified that he had provided "upwards of $20,000 to his mother-in-law to disperse amongst [his] children." He further testified that he had medical insurance coverage for the child, but he admitted that he had not given an insurance card to Appellees directly. D.R. testified that Appellant never gave her any insurance card for the child and that "[the child] has been on Medicaid for a long time."

After Appellant left, the child's mother returned the child to live with Appellees. The child continued residing with them until the trial in August 2017. Appellant testified that he believed the child was merely visiting with Appellees and at times, spending the night. D.R. testified that when the child returned after spending a month with her parents, the child had blisters with pus all over her body that required antibiotics.

Appellees filed the underlying termination suit in September 2016, but they had difficulty locating Appellant. After hiring a private investigator, Appellees secured service on Appellant in January 2017. Appellant filed a document that the trial court construed as a general denial. In that pleading, Appellant acknowledges that "it will reach a six month period that [he] has not seen [the child]," but he faults D.R. for "not bringing the child to visit when requested" and denying access to her. Appellant testified that until he was served, he did not know that the child

4

was living with Appellees. He acknowledges that after he was served, he knew where the child was, but he did not provide any support directly to Appellees for the child.

D.R. testified that Appellant stayed away from the child until the trial date without a phone call or a visit and that he did nothing to retrieve the child. Appellant testified that Appellees refused to communicate with him, that he attempted to provide gifts, and that he asked his mother-in-law and sister-in-law to arrange for him to go over to Appellees' house, but "it is not happening."

During the bench trial, in addition to the testimony of Appellant and Appellees, the court considered a home study of Appellees' family that was admitted into evidence. The home study concluded that the child should continue to reside with Appellees and that they should be allowed to adopt her. At the conclusion of the trial, the court entered an order terminating the mother's parental rights and Appellant's parental rights to the child. This appeal followed.

**DISCUSSION**

Appellant challenges the factual and legal sufficiency of the evidence supporting the court's findings. In a private proceeding to terminate the parent-child relationship, the petitioner must establish by clear and convincing evidence a predicate violation—i.e., that the parent's acts or omissions constitute a statutory ground for termination—and that termination of parental rights is in the child's best interest. Tex. Fam. Code § 161.001(b)(1), (2); *In re B.T.D.*, No. 01-16-00582-CV, 2017 Tex. App. LEXIS 503, at *23 (Tex. App.—Houston [1st Dist.] Jan. 20, 2017, no pet.) (mem. op.); *see In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014).

We evaluate the legal sufficiency of the evidence in parental-rights termination cases by reviewing all the evidence in the light most favorable to the finding to determine whether a

reasonable factfinder could have formed a firm belief or conviction that the challenged finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id*.

We evaluate the factual sufficiency of the evidence by reviewing the entire record, and we uphold the finding unless the disputed evidence that could not reasonably have been credited in favor of the finding is so significant that a reasonable factfinder could not have formed a firm belief or conviction that the allegation was true. *In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014). We do not weigh witness credibility issues that depend on appearance and demeanor, and when credibility issues are reflected in the record, we must defer to the factfinder's determinations if they are not unreasonable. *In re J.P.B.*, 180 S.W.3d at 573.

**Sufficient evidence that Appellant voluntarily left child without adequate support for 6 months**

In his first and second issues, Appellant challenges the factual and legal sufficiency of the court's finding that he voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months. Under subsection 161.001(b)(1)(C) of the Family Code, a court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has voluntarily left the child alone or in the possession of another without providing adequate support for the child and remained away for a period of at least six months. *See* Tex. Fam. Code § 161.001(b)(1)(C). The six-month minimum is a period of six months consecutively. *Jordan v. Dossey*, 325 S.W.3d 700, 727 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

6

### 1. December 2015-July 2016

Appellant contends that he never "voluntarily placed" the child with Appellees because his wife was the one who "gave" the child to them. However, for purposes of determining whether section 161.001(b)(1)(C) of the Family Code is met, "[i]t should not be significant whether a parent physically delivers their child to someone who will care for the child." *In re R.M.*, 180 S.W.3d 874, 878 (Tex. App.—Texarkana 2005, no pet.) (noting that parent did not personally deliver child to parent's great aunt and uncle and did not initiate arrangement for them to care for his child). Here, the evidence shows that the period from December 2015 through July 2016 is a period of at least six consecutive months during which Appellant remained away from the child—who was living with Appellees—and did not provide support for her.

Although Appellant stated that he did not know that his wife gave the child to Appellees in April 2015, by December 2015 he saw the child leaving from her grandmother's house with D.R. without stopping them, he subsequently saw the child dropped off at her own sister's birthday party by D.R. in June 2016, and the evidence is undisputed that Appellees kept the child until July 2016. Appellant would have also been alerted that the child was not living with her grandmother and siblings when he learned in 2015 that his four other children were involved in a CPS case. D.R. testified that to her knowledge, Appellant did not see the child from April 2015 until July 2016, and that she did not receive any support from Appellant for the child. Further, D.R. testified that Appellant told her that if he were given some "compensation for one year and a half," he would "wash his hands and sign over her rights," which D.R. understood as an attempt to sell the child to her. The court could have credited the evidence at trial showing that Appellant voluntarily

7

left the child with Appellees without providing support for her and remained away for at least six months.  The court could have also discredited Appellant's testimony that he thought the child was only visiting Appellees, and Appellant's contention that D.R. was being untruthful about his request for compensation because she was unable to provide a dollar amount.

### 2.  January 2017-August 2017

Additionally, the period from January 2017 to August 2017 is a period of at least six consecutive months during which Appellant knew the child was living with Appellees, voluntarily left her there, and did not provide support for her.  Appellant acknowledged that as of January 13, 2017—when he was served with Appellees' petition to terminate his parental rights to the child—he knew the child was living with them and where they lived, but he did not provide any support directly to Appellees for the child.  Aside from Appellant's testimony about the $20,000 he gave to his mother-in-law, there was no evidence that he provided any support for the child indirectly either.  There is no evidence that Appellant made any arrangements to provide assistance to Appellees for the child or that he had reached an agreement with Appellees that no such assistance was needed. *See Jordan*, 325 S.W.3d at 728 (noting that "there was no understanding between Akin and Jordan that Jordan would not be sending support because Akin could provide adequate support on his own"); *In re T.L.S.*, No. 01-12-00434-CV, 2012 Tex. App. LEXIS 10297, at *14-15 (Tex. App.—Houston [1st Dist.] Dec. 13, 2012, no pet.) (mem. op.) (noting lack of evidence showing that appellant made arrangements to provide assistance or had reached agreement with her mother, as caregiver of appellant's children, that no such assistance was needed).  Appellant's pleading acknowledged that it "will reach a six month period that [he] has not seen [the child]" and requested

8

that his mother-in-law be named the child's managing conservator, not him. D.R. testified that through the date of trial (August 2017), Appellant stayed away from the child without a phone call or a visit, and that he did nothing to retrieve the child from Appellees. The court could have credited the evidence at trial showing that Appellant voluntarily left the child with Appellees without providing support for her and that Appellant remained away for at least six months. The court could have also discredited Appellant's testimony that he attempted to provide gifts, provided some portion of $20,000 to his mother-in-law for the child, and asked his mother-in-law and sister-in-law to arrange visits for him at Appellees' house.

Viewing the evidence in the light most favorable to the court's findings, and assuming that the court resolved any disputed facts in favor of its findings, we conclude that the court could have reasonably formed a firm belief or conviction that Appellant left the child alone or in the possession of another without providing adequate support for the child and remained away for a period of at least six months. *See* Tex. Fam. Code § 161.001(b)(1)(C). Further, considering the entire record, we conclude that any disputed evidence could have been reconciled in favor of the court's findings, such that the court could have reasonably formed a firm belief or conviction that Appellant left the child alone or in the possession of another without providing adequate support for the child and remained away for a period of at least six months. Accordingly, the evidence in this record is legally and factually sufficient to support a statutory ground for termination of Appellant's parental rights under section 161.001(b)(1)(C) of the Family Code. We overrule Appellant's first and second issues.

**Sufficient evidence supported best-interest finding**

In his third issue, Appellant challenges the factual and legal sufficiency of the court's finding that termination of his parental rights was in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2). We may consider a non-exhaustive list of factors in determining whether termination of parental rights was in the child's best interest, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

Here, many of the best-interest factors are addressed in the home study that was admitted into evidence. The home study was conducted by Nichole Mueller, who has a Master's degree in social work and almost eleven years of experience working for Child Protective Services.

As to the emotional and physical needs of the child, the study reflects that the child is bonded to Appellees and calls them "daddy" and "mommy." The report notes that when the child first came to live with Appellees, she was distant, did not want hugs, kisses, or cuddling, and did not talk. Now, the child is happy, talkative, and smiles all the time.

As to the parental abilities of the individuals seeking custody, the study states that Appellees are bonded to the child, that they are able to provide a safe and permanent home for her,

10

that they are financially able to meet the child's needs, that they are involved in their children's schools, and that they have never had any involvement with Child Protective Services.

As to the stability of the home or proposed placement, the study notes that Appellees have been together for twenty years and married since 2008, that they have a good support system of friends and family, that they have lived in their home for eight years, that they have stable employment histories, and that all of their references had positive things to say about them, including how generous and caring they are toward others. Appellees' children who live at home stated that the child is funny, that they like to play with her, that she is a lot of fun, and "[w]e love her."

As to the plans for the child by the individuals seeking custody, Appellees plan to adopt the child. The study recommends to the court that the child continue to live with Appellees in their home and that they should move forward with adopting her. At trial, D.R. testified that she and B.R. want to support the child emotionally and financially, enroll her in school, take her to the doctor and get her immunizations that she has only had once in her lifetime, and adopt her.

As to the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, Appellant initially testified that he was employed as an industrial electrician with Zachry Industrial earning $38.75 an hour, but he later acknowledged that due to his "wrongful termination" he had been unemployed for six weeks.[4] Appellant disagreed that

_____

[4] Appellant also acknowledged that in 1997 he was arrested on four counts of aggravated assault with a deadly weapon and two counts of aggravated robbery and sentenced to eight years in the penitentiary, and that in 2011 and 2013 he was arrested for driving with an invalid license with a prior conviction or suspension. *See In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (noting that parent's criminal history is non-dispositive factor in determining best interest of children).

11

in order for him not to know where his child was living, he had to have been uninvolved with his child's life. D.R. testified that given Appellant's lack of involvement with the child, she believed it was best for the child to continue living with her and B.R.

As to any excuse for the acts or omissions of the parent, Appellant contends that he did not know the child had been living with Appellees and that they later prevented him from seeing or supporting her. However, even after Appellant knew where the child was living, there was no evidence that Appellant sent anything to Appellees to support the child, that he tried to go to their home to see the child, or that he asked the court to allow his visitation.

Viewing the evidence in the light most favorable to the court's findings, and assuming that the court resolved any disputed facts in favor of its findings, we conclude that the court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2). Further, considering the entire record, we conclude that any disputed evidence could have been reconciled in favor of the court's findings, such that the court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the child's best interest. Thus, the evidence in this record is legally and factually sufficient to support the court's best-interest finding under section 161.001(b)(2) of the Family Code. We overrule Appellant's third issue.

## CONCLUSION

We affirm the district court's final order of termination.

12

_____

                         Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed:   March 6, 2018