

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00051-CV

_____

IN THE INTEREST OF B.B., A CHILD

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 90406

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights after both B.B. and Mother tested positive for methamphetamine at B.B.'s birth.[1] After a bench trial, the trial court found that Mother and Father (1) knowingly placed or allowed B.B. to remain in conditions or surroundings that endangered her physical or emotional well-being, (2) engaged in conduct or knowingly placed B.B. with persons who engaged in conduct that endangered her physical or emotional well-being, (3) constructively abandoned B.B., (4) failed to comply with the provisions of a court order that specifically established the actions necessary for B.B.'s return, and (5) used a controlled substance in a manner that endangered B.B.'s health or safety. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P). The trial court also found that Father knowingly engaged in criminal conduct that resulted in a conviction and confinement or imprisonment and inability to care for B.B. for not less than two years from the date of the Department's petition. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(Q). After determining that it was in B.B.'s best interests, the trial court terminated Mother's and Father's parental rights to B.B. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

On appeal, Father[2] argues that the evidence is legally and factually insufficient to support the trial court's findings that there were statutory grounds to terminate his parental rights.[3]

_____

[1]We use initials to protect the identity of the child and refer to her parents as Mother and Father. *See* TEX. R. APP. P. 9.8.

[2]Mother did not appeal the termination of her parental rights to B.B.

[3]Father does not challenge the trial court's best-interest finding.

Because Father failed to challenge the trial court's statutory Ground Q finding and sufficient evidence supported the trial court's finding under Ground E, we overrule Father's point of error and affirm the trial court's judgment terminating his parental rights.

## I.      Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

3

the allegations sought to be established.'" *Id.* (quoting Tex. Fam. Code Ann. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002))); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably

4

have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d at 26)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

## II.     Unchallenged Ground Q Finding Supports Termination of Father's Parental Rights

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d at 362) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.))).

Father asserts that the evidence is legally and factually insufficient to support the trial court's findings under Grounds D, E, N, O, and P, but his brief wholly fails to challenge the trial court's Ground Q finding. When the trial court makes findings that multiple statutory grounds support termination of parental rights and the appellant does not challenge all statutory grounds found, we will affirm the trial court's termination order based on the unchallenged statutory ground if the trial court's best-interest finding is also unchallenged. *See In re A.G.-U.*, No. 06-17-00078-CV, 2017 WL 5473766, at *1 (Tex. App.—Texarkana Nov. 15, 2017, no pet.) (mem. op.) (order terminating parental rights affirmed when parent did not challenge trial court's findings on one statutory ground and best interest); *B.H.-L v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-17-00772-CV, 2018 WL 1278720, at *1–2 (Tex. App.—Austin Mar. 13, 2016, no pet.) (mem. op.) (same).

Based on the unchallenged Ground Q and best-interest findings, we overrule Father's point of error and affirm the termination of Father's parental rights to B.B.

## III. We Must Still Conduct a Due Process Review of Ground D or E

Even so, when the trial court's findings under Grounds D or E are challenged on appeal, due process demands that we review the evidence supporting the finding under at least one of those grounds. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under [S]ection 161.001(b)(1)(D) or (E) of the Family Code."). This is because termination of parental rights under these grounds may implicate the parent's parental rights to other children. *Id.* at 234; *see* TEX. FAM. CODE

6

ANN. § 161.001(b)(1)(M) (providing as a ground for termination of parental rights that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)").

## A.     Requirements Under Ground E

Ground E permits the termination of a parent's parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "'Endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re L.E.S.*, 471 S.W.3d at 923; *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.). "It is not necessary that the conduct be directed at the child[ren] or that the child[ren] actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923. Under Ground "(E), it is sufficient that the child[ren]'s well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367).

"Further, termination under [Ground] (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.))); *see Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67. Ground E "refers only to the parent's conduct, as evidenced not only by the parent's acts, but

also by the parent's omissions or failures to act." *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) (quoting *In re N.S.G.*, 235 S.W.3d at 366–67). "The conduct to be examined includes what the parent did both before and after the child was born." *Id.* at 685 (quoting *In re N.S.G.*, 235 S.W.3d at 367). "The endangering conduct may also occur 'either before or after the child's removal by the Department.'" *In re S.A.W.*, No. 06-21-00116-CV, 2022 WL 1193667, at *4 (Tex. App.—Texarkana Apr. 22, 2022, pet. denied) (mem. op.) (quoting *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied))).

### B.    The Evidence at Trial

B.B., who was born on June 4, 2021, was one year old at the time of trial. Brittany Allen, the Department's caseworker, testified that Father admitted to using methamphetamine daily. Allen testified, and admitted drug test results showed, that Father tested positive for methamphetamine and amphetamine four days after B.B.'s birth. According to Allen, Father was incarcerated shortly after B.B.'s birth and remained incarcerated during the pendency of the case. Allen also testified that Father reported being in a gang that called him "Tow Chain."

The record showed that Father, who was thirty-six, had a prior criminal history. Allen testified that Father was convicted of sexual assault of a child. Judgments of conviction against Father showed that he was previously convicted of two counts of failing to register as a sex offender, as well as two counts of unauthorized use of a motor vehicle, one count of possession of cocaine, two counts of forgery, and several misdemeanor offenses.

Father's criminal history after B.B.'s birth was also significant. Judgments of conviction introduced by the Department showed that Father pled guilty to, and was convicted of, two counts of possession of a penalty group 1 controlled substance and two counts of bail jumping and failure to appear. Pursuant to a plea bargain agreement with the State, on July 15, 2021, Father received a sentence of six years' imprisonment for those offenses. On July 26, 2021, Father also pled guilty to theft of property valued at $750.00 or more, but less than $2,500.00, and was incarcerated for twelve months. Allen's testimony, and an admitted judgment of conviction, showed that Father was convicted of family violence assault on July 29 after he pled guilty to the offense.

After hearing this evidence, the trial court found that Father had engaged in conduct that endangered B.B.'s physical or emotional well-being.

### C.     Sufficient Evidence Supported the Ground E Finding

The evidence at trial focused on Father's drug use and incarceration. "Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *In re J.L.B.*, 349 S.W.3d at 848 (quoting *In re N.S.G.*, 235 S.W.3d at 368); *see In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."). Also, "imprisonment is certainly a factor to be considered by the trial court on the issue of endangerment" under Ground E. *In re N.S.G.*, 235 S.W.3d at 367 (quoting *Boyd*, 727 S.W.2d at 533). This is because "[a] parent's

9

criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment." *In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021).

The evidence at trial showed that, after B.B.'s birth, Father admitted that he used methamphetamine daily. "'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under' Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.) (quoting *Walker*, 312 S.W.3d at 617)). Here, Father was convicted after B.B.'s birth for possessing controlled substances while Mother was pregnant with B.B., including just nine days before B.B.'s birth.

"A parent's failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under [Ground] (E) even if there is no direct evidence that the parent's drug use actually injured the child." *In re H.M.J.*, 2018 WL 3028980, at *5 (quoting *In re J.A.W.*, No. 02-08-215-CV, 2009 WL 579287, at *4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.) (citing *Vasquez v. Tex. Dep't of Protective & Regul. Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). Four days after B.B.'s birth, and one day after the Department's petition was filed, Father tested positive for methamphetamine and amphetamine. His admitted daily habit reasonably led the fact-finder to conclude that he would not be responsible enough to care for B.B.

An offense committed by a parent before the birth of the parent's child "can be a relevant factor in establishing an endangering course of conduct." *In re E.N.C.*, 384 S.W.3d at 804–05. Also, conduct that demonstrates "[d]omestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re J.A.W.*, No. 06-09-00068-CV, 2010 WL 1236432, at *4 (Tex. App.—Texarkana Apr. 1, 2010, pet. denied); *see E.E. v. Tex. Dep't of Fam. & Protective Servs.*, 598 S.W.3d 389, 405 (Tex. App.—Austin 2020, no pet.). The evidence showed that Father had a lengthy criminal history before B.B.'s birth, including sexual assault of a child and, more recently, family violence assault.

In addition to committing criminal offenses before B.B.'s birth, Father committed the offense of bail jumping after B.B.'s birth. His pleas of guilty on July 15, 26, and 29, 2021, to several offenses committed after B.B.'s birth led to Father's imprisonment for up to six years. Father's imprisonment removed his ability to parent newborn B.B. and exposed her to the loss of a caretaker, subjecting her to a life of uncertainty and instability if Father's parental rights were not terminated. An examination of all of Father's criminal offenses showed that Father engaged in more serious crimes as time passed, received his heaviest sentence after B.B.'s birth, and reported that he was a gang member.

Despite that evidence, Father argues that it is insufficient because he was "incarcerated for practically all of the Child's life." That fact, however, weighs against Father because a fact-finder may "infer that a parent's lack of contact with the child and absence from the child's life endangers the child's emotional well-being." *E.E.*, 598 S.W.3d at 405–06; *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), *overruled in part on*

11

*other grounds by In re L.C.L.*, 599 S.W.3d 79, 85 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (concluding that parent's criminal conduct, which resulted in the parent's imprisonment and absence from child's life, created an "emotional vacuum" in the child's life that endangered the child's well-being).

A long history of irresponsible choices is probative evidence that a parent has engaged in conduct that has endangered a child. *See In re J.O.A.*, 283 S.W.3d at 346. From the above-recited evidence, we find that the trial court could have formed a firm belief or conviction that Father's life choices, including his pattern of knowingly engaging in illegal activity, left him unable to care for B.B. and constituted a pattern of conduct inconsistent with the very idea of childrearing. Because the record firmly established that Father engaged in conduct that endangered B.B.'s physical and emotional well-being, we find that legally and factually sufficient evidence supported the trial court's finding under Ground E.[4]

## IV.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:       October 10, 2022
Date Decided:         October 19, 2022

---

[4]Since there was sufficient evidence supporting the trial court's finding under Grounds Q and E, we need not review its findings under the remaining grounds. *See J.T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-21-00070-CV, 2021 WL 2672055, at *9 (Tex. App.—Austin June 30, 2021, no pet.) (mem. op.); *In re M.F.*, No. 14-19-00964-CV, 2020 WL 2832166, at *8 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. denied) (mem. op.).