

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00047-CV

IN THE INTEREST OF B.B., C.B., AND J.B., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 23C0250-CCL

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights as to their three children, B.B., C.B., and J.B.[1] Following a bench trial, the trial court terminated Mother's and Father's parental rights after finding that (1) they "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger[ed] the[ir] physical or emotional well-being," (2) they "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct that endanger[ed] the[ir] physical or emotional well-being," and (3) termination of their parental rights was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (b)(2) (Supp.).

On appeal, Mother and Father both argue that the evidence is legally and factually insufficient to support a ground of termination and that the evidence is legally and factually insufficient to support a finding that the termination of their parental rights was in the best interests of their children. Upon review, we find that sufficient evidence supported the trial court's finding that Mother's and Father's parental rights should be terminated under ground E and that doing so was in the children's best interests.

As an initial matter, the underlying case in this appeal and a companion case, appealed as *In the Interest of F.S.*, cause number 06-24-00048-CV, were consolidated at the trial court level. In our opinion in cause number 06-24-00048-CV, we addressed the issues Father raised in this appeal. This is because, in assessing termination as to F.S., we considered not only Father's conduct regarding F.S., but also his conduct regarding B.B., C.B., and J.B. We adopt those

---

[1] We use initials or pseudonyms to protect the identities of the children, including parents and other family members. *See* TEX. R. APP. P. 9.8(b).

findings for the purposes of Father's appeal in this case. For the reasons stated when affirming termination as to F.S., we affirm the termination of Father's parental rights as to B.B., C.B., and J.B., finding that there is legally and factually sufficient evidence under Section 161.001(b)(1)(E) of the Texas Family Code and that termination is in the best interests of B.B., C.B., and J.B.

We turn now to the issues Mother[2] has raised.

## I. A Statutory Ground for Termination of Parental Rights is Supported by Legally and Factually Sufficient Evidence

In her first point of error, Mother asserts that the evidence is legally and factually insufficient to support the trial court's findings that statutory grounds existed to support the termination of her parental rights.

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "This Court is . . . required to 'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500).

---

[2]Consistent with our opinion in *In the Interest of F.S.*, cause number 06-24-00048-CV, "Bonnie" in that case is referred to as Mother in this case.

"[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child[ren]'s best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209

4

S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108); *see In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we must undertake '"an exacting review of the entire record with a healthy regard for the constitutional interests at stake."'" *Id.* (alteration in original) (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109). When, as in this case, "findings of fact and conclusions of law are not properly requested and none are filed, the trial court's judgment implies all findings of fact necessary to support it." *In re Z.E.*, No. 05-22-01337-CV, 2023 WL 3595627, at *5 (Tex. App.—Dallas May 23, 2023, pet. denied) (mem. op.) (citing *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child[ren] is

5

paramount.'"" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

### B.    The Evidence at Trial

In our opinion in *In the Interest of F.S.*, cause number 06-24-00048-CV, we provided a detailed analysis of the facts relevant to Mother. We adopt those findings here.

### C.    Sufficient Evidence Supports the Ground E Findings

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child[ren]'s best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)). "Even so, when the trial court's findings under grounds D or E are challenged on appeal, due process demands that we review the evidence supporting the findings under at least one of those grounds." *In re A.B.*, No. 06-22-00020-CV, 2023 WL 7475743, at *2 (Tex. App.—Texarkana Nov. 13, 2023, pet. denied) (mem. op.) (citing *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under [S]ection 161.001(b)(1)(D) or (E) of the Family Code."). "This is because termination of parental rights under these grounds may implicate the parent's parental rights to other children." *Id.* (citing *In re N.G.*, 577 S.W.3d at 234; TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (Supp.) (providing as a ground for termination of parental rights that the parent "had his or her parent-

6

child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)").

Ground E permits the termination of a parent's parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct . . . which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "'[E]ndanger' means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment . . . ." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.); *In re L.E.S.*, 471 S.W.3d at 923. "It is not necessary that the conduct be directed at the child[ren] or that the child[ren] actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923. "Under [ground] (E), it is sufficient that the child[ren]'s well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367). "Further, termination under [ground] (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)); *see Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67.

Ground E "refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied); *In re N.S.G.*, 235 S.W.3d at 366–67. The endangering conduct

may also occur "either before or after the child[ren]'s removal by the Department." *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

As stated in further detail in *In the Interest of F.S.*, cause number 06-24-00048-CV, the Department demonstrated that Mother was aware B.B., C.B., and J.B. were having sex under her trailer.[3] Mother was not stopping that behavior, and she was not taking that behavior seriously. To address the children's behavior, the Department directed Mother to seek counseling for the children in January 2023, but she did not pursue that counseling until late February 2023. Even then, their counselor was not initially informed about any allegations of sexual abuse. The counselor was instead told the reason the children needed counseling was "because they witnessed law enforcement coming in and arresting [Father] for the sexual assault of [another child] and they were traumatized."

Mother was also directed to install cameras to watch the children and protect them from sexual behavior. In her brief, Mother claims she installed those cameras and was actively protecting the children. Mother claims "[t]he record contains a specific incident of inappropriate behavior by one child," which she claims she "saw on the cameras and immediately addressed." Upon review, we find Mother is correct that, in one instance, J.W., the father of one of Mother's other children, testified that Mother stopped C.B. from "pull[ing] out his penis in front of his little brother" after she caught C.B. doing so on camera. However, J.W. is a truck driver who

---

[3]At the time, the children were between the ages of five and eight years old.

8

spends a great deal of time on the road, and "he was not aware" of all of the sexual behavior that was ongoing.[4]

Other trial testimony also demonstrated that the cameras were not always functioning. Judie Townsend, a special investigator with the Department, testified that Mother was "supposed to have put up some cameras, but [Mother and Father] claimed that the kids kept on turning the cameras off."

In her brief, Mother also argues that she took preventative steps to protect the children from each other and from sexual contact. For example, Mother claims that, to avoid having one child, C.B., go out and have sexual relations with another child, either Mother or Father slept with C.B. Despite her claim, however, the trial testimony demonstrates "that did not last."

Further, as to any abuse by Father against the children, Mother argues in her brief that the "new outcries of sexual abuse by all three children" were against Father and were not against her. Mother argues, "The record is void of any indication that the child, C.B., informed his mother . . . of this abuse." The trial testimony does not, however, bear out that claim and instead demonstrates Mother was aware of Father's abuse and did not stop it.

Rhonda Synder with CASA testified that the children claimed "they were touched sexually by their father" and that "their mother basically did nothing, told him not to do it again." In one example, the trial testimony demonstrated that one of the children, J.B., reported, "My mom knew about dad doing sex" with B.B., J.B., and C.B. J.B. also drew pictures of her and Mother and stated, "Mom, dad touched me wrong" to which Mother replied, "Don't tell."

_____

[4]Even so, when J.W. was notified that his daughter, D.B., may have been involved in sexual activity and that Father had been arrested for alleged sexual misconduct towards the children, he still requested that D.B. stay with Mother.

Maureen Fletcher with the Texarkana Children's Advocacy Center also testified that J.B. told Mother about the abuse and that J.B. was punished for reporting the abuse to Mother. Fletcher testified that there were "three different occasions that [J.B.] told [her] that she told [Mother]."

Based on the testimony at trial, the trial court could find, by clear and convincing evidence, that Mother engaged in a course of conduct that endangered the children's physical well-being. Mother endangered B.B., C.B., and J.B. by being aware of and yet not protecting them from sexual abuse by each other and by Father. *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (recognizing "child[ren are] endangered when the environment creates a potential for danger that the parent is aware of but disregards"). Since there is sufficient evidence supporting the trial court's finding under ground E, we need not review its findings under ground D. *See J.T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-21-00070-CV, 2021 WL 2672055, at *9 (Tex. App.—Austin June 30, 2021, no pet.) (mem. op.); *In re M.F.*, No. 14-19-00964-CV, 2020 WL 2832166, at *8 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. denied) (mem. op.). We overrule Mother's first point of error.

## II. Sufficient Evidence Supports the Trial Court's Best-Interest Finding

Next, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the children's best interests. After reviewing the record, we disagree.

### A. Standard of Review

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re R.W.*, 627 S.W.3d 501, 516 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re*

10

*J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, pet. denied) (mem. op.)). "Termination '"can never be justified without the most solid and substantial reasons."'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

"In determining the best interests of the child[ren]," courts consider the following *Holley* factors:

> (1) the desires of the child[ren], (2) the emotional and physical needs of the child[ren] now and in the future, (3) the emotional and physical danger to the child[ren] now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child[ren] by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d at 807; *see also* TEX. FAM. CODE ANN. § 263.307(b) (providing thirteen factors for the court and Department to consider in a best interest of a child determination).

The Department is not required to present proof of each *Holley* factor. *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied) (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). "When considering the child[ren]'s best interest[s], we may take into account that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment." *Id.* (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.)). "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child[ren]'s best interest[s]." *Id.* (citing *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.)). "[T]he parent's . . . past performance

11

as a parent [is] . . . relevant in determining the child[ren]'s best interest[s]." *Id.* (citing *In re C.H.*, 89 S.W.3d at 28). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

### B. Analysis of the *Holley* Factors

With the first *Holley* factor, we must consider the desires of the children. Although Mother did not testify at the trial, the children's caretaker, Melissa Smith,[5] testified that, after the children were removed, they did not want to go back to Mother: "Well, after the intake, it was really, really bad after - - during the visitation after they were removed. Before that, we had issues with the girls crying that they didn't want to go home." Smith also testified that the children were scared of Mother during supervised visitations. J.B. also reported to her counselor that she liked where she lived, which was "[Smith's] house," and J.B.'s preference was to stay with Smith. Accordingly, based upon the trial testimony, we find the first *Holley* factor weighs in favor of termination.

As to the second factor, "the emotional and physical needs of the child[ren] now and in the future," Mother argues the Department recognized in its family plan that Mother had "the basic needs and resources as it relate[d] to her being able to meet the basic needs of her children." Mother also argues that she successfully completed her parenting classes, sought out additional parenting resources, and completed courses through For the Sake of One.

---

[5]To protect the identities of the children, although not a family member, we use a pseudonym here because of Smith's continued relationship with the children.

Upon review, we have considered this factor. While the record does support Mother's claim that she was attending counseling, was engaging in her case, and was seeking out resources up until she was incarcerated, those facts do not necessarily demonstrate that she can care for the emotional and physical needs of her children now and in the future. Indeed, as recognized above, in caring for their emotional needs, Mother waited over a month to place the children in counseling after she was aware of the sexual abuse; and, even then, she did not disclose to the counselor that they needed counseling for sexual abuse. As a result, the second *Holley* factor weighs in favor of termination.

Mother also argues the third *Holley* factor, "the emotional and physical danger to the child[ren] now and in the future," supports her argument against termination. Mother argues that, in her psychological evaluation, she was found to "not have characteristics like those know[n] to physically abuse children and her expressed parenting attitudes were generally acceptable." Mother also argues that her counselor found that she appeared "sincere in her desire to make needed changes that [would] positively impact her life and the lives of her children." While Mother is correct as to those claims, those reports still found her prognosis was "fair to guarded" in part due to her "clinically significant emotional difficulties and personality impairment," her childhood trauma, and "a past history of cannabis use." Considering those facts and those counseling records, we find this factor weighs in favor of termination.

As for the fourth *Holley* factor, the parental abilities of the individuals seeking custody, we can consider Mother's past ability to care for her children as an indicator of future actions. *See In re A.T.*, No. 06-14-00091-CV, 2015 WL 733275, at *5 (Tex. App.—Texarkana Feb. 18,

13

2015, no pet.) (mem. op.). Here, the trial testimony demonstrates that Mother was not able to properly care for her children. Smith testified at trial that the children "were thirsty and hungry every time" they came into her care. Smith also testified that the children were dirty and wore "inappropriate weather clothing." Smith testified as follows:

> They were in one bedroom originally in the old house. There were times we went in to help them clean up the bedroom. It would be dirty. There was food, cups with rotten milk in it, stuff like that. We would help clean all that out. It was dirty a lot.

Smith also testified that she treated the females for head lice "every time [they] got them." She was aware that B.B. "had been sleeping on a filthy mattress with no sheet," so she sent one home with her, and "[i]t never got put on." Consequently, we find the fourth *Holley* factor weighs in favor of termination.

Mother argues that the fifth *Holley* factor, "the programs available to assist these individuals," supports her claim against termination. She argues, "[T]he record reflects through the facts stated above that [Mother] utilized every resource available to her through the Department and sought out additional resources." Upon review, we find Mother did utilize parental resources, and this factor does weigh against termination.

The sixth *Holley* factor includes a consideration of Mother's plans for the children. At the time of trial, Mother was incarcerated. As a result, she could not testify as to her future plans, if any, for the children. *See In re K.C.*, No. 07-18-00282-CV, 2018 WL 6729944, at *5 (Tex. App.—Amarillo Dec. 21, 2018, pet. denied) (mem. op.) (where the appellant gave no information through testimony, the court was not informed on matters critical to the best-interest

14

determination such as the appellant's plans for the family). Because Mother did not provide any evidence as to her future plans, we find this factor weighs in favor of termination.

The seventh *Holley* factor is the stability of the home. Again, Mother could not testify to the stability of her home. Smith, however, testified that she was the primary caregiver for the children for a significant period of their lives. Even before the children were removed from Mother, they were in Smith's care.[6] Smith testified that J.B. and B.B. began living with her when they were very young, and C.B. came into her care when he was repeating kindergarten because Mother had stopped providing an education for him. Smith also testified that B.B. and J.B. were in her care "almost full time" for close to six years. In accordance with Smith's testimony, while Smith had provided a stable home for the children through those years, Mother had not cared for them during that time. We find this factor favors termination.

The eighth and ninth *Holley* factors include a consideration of the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one and a consideration of whether there is any excuse for the acts or omissions of the parent. As outlined in greater detail above, Mother neglected the children by allowing them to be sexually abused both by each other and by Father. Notably, the evidence at trial demonstrates that, while Mother was charged with taking care of her children, the "children were having sex with each other." After being made aware of that abuse, Mother was directed to install cameras and place the children in counseling.

---

[6]Snyder also described Smith's home as very well organized with space for each of the children. Smith also confirmed that a home study was performed on her home, and it was approved.

15

Mother did not comply with those directives, Mother allowed the children to turn the cameras off, and Mother specifically denied to the counselor that the children had been sexually abused. Further, the trial testimony demonstrated that Mother was aware of Father's abuse and did not protect the children from it. Smith testified that Mother was aware of the abuse:

> Q  [(By the State)] Was there ever a time that the kids notified [Mother] of the sexual abuse by [Father]?
>
> A  [(By Smith)] Yes. The girls both said they told her. [J.B.] said she told her, and she told her don't tell anybody. They weren't supposed to tell me either. And [J.B.] even drew a picture saying, no, mom, and [Mother] told her no, ma'am. [B.B.] later had said her dad was on top of her and she screamed, and her mom walked in and looked at him. Would you like to do that with a grownup instead? And she said they left her there and went to the bedroom.

Despite being aware of the abuse, however, Mother did nothing to prevent it. Such "[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct." *In re Z.M.*, 456 S.W.3d 677, 689 (Tex. App.—Texarkana 2015, no pet.) (citing *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2014, pet. denied) (mem. op.)). Further, Mother has offered no excuse for those acts or omissions. Those two factors weigh heavily in favor of termination.

### C.    Section 263.307(b) Factors

Mother also argues that several of the factors in Section 263.307(b) of the Texas Family Code support her claim that termination was not in her children's best interests. *See* TEX. FAM. CODE ANN. § 263.307(b). Mother specifically claims that factors ten, eleven, and twelve support her claim:

> (10) the willingness and ability of the child[ren]'s family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate

agency's close supervision; (11) the willingness and ability of the child[ren]'s family to effect positive environmental and personal changes within a reasonable period of time; [and] (12) whether the child[ren]'s family demonstrates adequate parenting skills.

TEX. FAM. CODE ANN. § 263.307(b)(10)–(12).

Again, upon review, while Mother did seek out and engage in the services available to her, which supports her claim against termination under Section 263.307(b)(10) of the Texas Family Code, we find factors eleven and twelve weigh in favor of termination. As outlined in greater detail above, Mother's failure to protect her children from the sexual behavior of her other children and of Father demonstrates that she has neither a "willingness" nor an "ability" "to effect positive environment and personal changes within a reasonable period of time" nor has she demonstrated "adequate parenting skills."

As a result, upon review and after weighing all of the *Holley* factors and the relevant factors from Section 263.307(b) of the Texas Family Code, we conclude there is legally and factually sufficient evidence to support the trial court's best-interests finding against Mother. We find the trial court's determination that termination was in the best interests of the children is supported by clear and convincing evidence, and we overrule Mother's second point of error.

17

## III. Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:   September 9, 2024
Date Decided:     October 9, 2024